Ready to call the first case for counsel is case number 21-1962, VAS Realty, LLC, against the United States. Mr. Vora. Good morning, Your Honors, and may it please the Court. The Court of Federal Claims ruling that VAS lacks standing should be reversed for two reasons. First, VAS, the incumbent lessor on the lease at issue, was an actual bidder with a direct economic interest in the outcome of the procurement. Standing requires no more. Second, even assuming the government's noncompliance argument, a finding GSA did not make at its time of award, VAS alleged that the actual awardee, Kate Marine, was ineligible due to its late proposal. And per this Court's rulings in Impreza and Tinton Falls, VAS had standing even if its own proposal was not compliant. Could you speak just a tiny bit louder, please? I apologize. And per this Court's rulings in Impreza and Tinton Falls, VAS had standing under those circumstances even if its own proposal was noncompliant. Now, there is no dispute that VAS wasn't actually agree with you about that. You still have a laches problem in terms of securing the relief that you would like here, which is setting aside the award and ordering it to be rebid. So how do you get around that problem? Yes, Your Honor. So laches requires, it's an equitable remedy that requires the party invoking the defense to demonstrate prejudice resulting from the delay in filing. Now here, despite the fact that the award was made in October of 2018, at the time we filed our protest in October of 2020, a notice to proceed had not yet been issued and performance on the lease had not yet begun. Not only that, the government agreed to stay issuance of that NTP pending resolution of our protest below. So it's difficult to conceive how the government argues prejudice resulting from the delay where, in fact, for reasons wholly unrelated to VAS' protest, it had taken no action on the awarded lease. Where do we find in the record the government's agreement to delay the award pending resolution of the GAO protest? No, I apologize, Your Honor. Pending the resolution of the Court of Federal Claims protest. After the filing of the case in the Court of Federal Claims. After the filing of the case in the Court of Federal Claims. But a long part of the delay occurred before that. It was about two years between the award and the filing of the bid protest in the Court of Federal Claims. That's correct. But, and I appreciate that, Your Honor, but even after the Court of Federal Claims dismissed VAS' protest in April, the government still didn't issue a notice to proceed. It didn't issue the notice to proceed until last month. And so the schedule upon which the government has been working with regards to the performance of this lease has always been entirely independent of the protests that VAS brought in October of 2020. And in the face of an OIG report from GSA indicating that this procurement was flawed in myriad different ways, the government should not be allowed to hide behind a timeliness argument when, in fact, it was making no affirmative movement on a lease either way. So just, does that answer your question, Judge Dyke? I think, yes, I think you've covered it. Thank you. So with regards to the question of VAS' noncompliance, again, at the time of award, GSA did not find VAS' proposal to be noncompliant. And that's confirmed in the joint appendix at 10501. The comparison between VAS' proposal and Cape Moraine's confirms that both proposed the appropriate square footage in the buildings they offered. And the government has conceded this throughout the briefing. At joint appendix 218, it states, GSA concluded that VAS' proposal was acceptable, but that VAS' higher rate would result in the agency awarding the lease to Cape Moraine. So the award was made on a low-priced, technically acceptable basis. It was not based upon a determination of VAS' noncompliance. But again, VAS' noncompliance is immaterial for purposes of this court's standing analysis because of the allegations in VAS' complaint that Cape Moraine was ineligible for award due to its late proposal. And the fact that the request for lease proposals contained a late-as-late clause that GSA could not waive. We made that point in our complaint at joint appendix 40 and 41. We made it in our motion for judgment on the administrative record, joint appendix 178. And Cape Moraine's ineligibility as a result of its delayed proposal was an express finding in the OIG report, which at joint appendix 10568 states GSA should have eliminated Cape Moraine's late proposal. Cape Moraine itself has conceded that the lateness of its proposal was indisputable. That's at joint appendix 264. The Court of Federal Claims ignored all of this in its standing analysis and chose to focus only on the government's post hoc argument that VAS' proposal was noncompliant. But again, per this court's decisions in Tintin Falls and Impreza, if the allegations in a protester's complaint would result in the agency having to recompete the procurement, which would be the case here even if you accept the government's allegations with regards to VAS' noncompliance, then VAS has a substantial chance because it would have an opportunity to compete in any new procurement. Now, the government attempts to deal with the decisions in Impreza and Tintin Falls by arguing that they're distinguishable. It argues that the Impreza holding was mere dicta, and that is not the case. The question of the protester's standing in that case was the first question that this court addressed in Impreza. And the government argues that Tintin Falls' true nature was a challenge to a small business set-aside. Again, here too, the very first question the court addressed in Tintin Falls was whether the protester's ineligibility deprived it of standing. And again, it held it did not because its allegations— Were there other bidders that dropped out before any type of determination was made as to the appropriateness of their bid? In this case, Your Honor? Yes. Yes, there was one other bidder. So does Impreza and Tintin Falls, does that capture those type of bidders? Because there's been—we know that they're out there. They've bidded, and they're out there, but there's been no finding that their bids were defective in any way. No, Your Honor. There was only one other bidder that voluntarily withdrew from the procurement. There were no other bidders that were evaluated because no other bidder went through the entire procurement process. The only bidders remaining at the end of this competition were Vass and Cape Moraine. So, I mean, necessarily, if Vass' allegations were correct and Cape Moraine was ineligible for award, Vass would be the only remaining bidder in the competition. So I'm just exploring what that does to this court's decision in Impreza and Tintin Falls where we found that the GSA must re-bid the contract because all bids were defective. But in this case, there's bids that were into the process, the landscape anyway, for a while, and then disappeared with the potential that they were not defective. Does this change those two cases in any way? I don't believe so. I mean, the fact that there was another bidder that voluntarily withdrew before the procurement was completed, I mean, that was a voluntary decision not to attempt to win the lease. And so if this procurement, I mean, if Cape Moraine was, in fact, ineligible, the only other bid that GSA had was Vass'. And if this court wants to accept the government's argument that Vass' bid was also ineligible, again, a finding GSA never made, that would mean the lease would have to be re-competed because there would be no remaining bids left for the government to consider. So the government has attempted to distinguish those cases, in our opinion, ineffectively. Cape Moraine, to its credit, does not attempt to distinguish those cases. It argues that Vass' has waived its ability to invoke them. But this court consistently declines to apply the waiver doctrine to cure questions of law, which the question of Vass' standing is. And this is especially true where that question is based on facts that were developed for the trial court below. And, again, here, from the outset of its complaint, Vass' has alleged that Cape Moraine's proposal was ineligible for award due to the fact it was submitted after the RLP's proposal submission deadline. The only thing Vass' didn't argue below was that if both bidders were ineligible for award, it would still have standing. And the reason it didn't do that is because GSA never found Vass' proposal to be ineligible. That is an argument the Department of Justice raised only post hoc after the protest had been filed. And Vass' position was then, and it remains, that that is a counterfactual that should not serve as the basis to, nor could it serve as the basis to deny Vass' standing in this case. Again, to the delay question, Judge Dyke already asked about it and we've spoken about it a bit. But I think it's worth noting that the real animating factor of Vass' protest in 2020 was the issuance of the Office of Inspector General report that indicated that the procurement was significantly flawed and the integrity of the award process was compromised. It confirmed that Cape Moraine's proposal was ineligible for award because it was late. It found that Cape Moraine had falsely represented its control of its offered property. And it concluded that GSA had incorrectly calculated the prices of the offered proposals, such that had it conducted an appropriate analysis of those prices, it would have been Vass' proposal, not Cape Moraine's, that was the lowest price offeror and under the RLP's award structure in line for the award. So, counsel, let me take you back to some questions that Judge Dyke was asking you. And I have concerns about the delay as well, and you're seeking injunctive relief. And the record shows that there was a 15-month delay after the OEG dismissed the protest. There was a six-month delay after receipt of the OEG's report. And all of this is in the context of you seeking an injunction. And, you know, to me anyway, an injunction signifies some sort of immediate harm or immediate threat. But yet that's belied by the significant delay that you had in bringing the case. So, Your Honor, I understand there is certainly a gap between the issuance of the OEG report and the filing of the case. But the OEG report was issued in March. This is more than a gap, you know, in terms of what we're talking. It's more like a chasm, you know. I won't. I will concede the characterization. But the point is that we filed the protest only after having confirmed that GSA had not acted on the lease. It had not authorized the awardee to begin performance upon it, and performance hadn't begun upon it. I apologize. I see I'm in my rebuttal time. May I respond to your question? Okay, but let me just follow up a little bit, because I think this is really the most significant problem in your case. Other than that, as I'll discuss with the government, I see a real problem with them awarding the bid when both sides are, for one reason or other, disqualified. However, this very issue that Judge Rayner has mentioned seems to, now that we get to talking about the equities rather than the law, to be a serious obstacle. So can you take another moment to see if you can explain it away? Sure. I'm happy to, Your Honor. The facts are these. Despite the fact that GSA awarded the lease in 2018, it took no action upon it. And Vassa's decision to file a protest in 2020 was based upon that fact. Had GSA made award in October of 2018 and issued the notice to proceed in 2018, and the new awardee begun its build-out work, presumably by then the government would have moved into its new building, I agree. The equities would weigh against an injunction, and in fact there would be nothing left to enjoin. But for whatever reason, reasons that are unexplained, GSA has never acted with any sort of expediency in the issuance of the notice to proceed or the efforts to move into the new building. And in fact, there is no actual prejudice to the government here, because it's still at least six months away from moving into the new building. And it is currently housed in a building. It's housed in Vassa's property. That lease runs through at the very least April of 2022. And under these circumstances, where the lease was awarded under such a cloud, a cloud that has already been confirmed by GSA's own Office of the Inspector General, the equities weigh in favor of GSA going back and just redoing this procurement from scratch. The only real prejudice, I'm not sure, honestly, I don't know exactly what the prejudice is. Presumably it has an interest in getting into this new building. For reasons that are entirely unexplained to me, or unexplained in the record, given just how problematic the award was, and the misrepresentations the OIG found that the awardee made in order to secure the lease. Under those circumstances, I do believe the equities weigh in favor of redoing this procurement from the start, not only for Vassa, it's certainly in Vassa's interest, but it's in the taxpayer's interest to ensure that the lease is awarded properly to a company that has not misrepresented any aspect of its proposal and complied with all the procedural rules that govern the procurement. Okay, thank you. And we'll save you rebuttal time. Thank you, Your Honor. Mr. Tosini, when you're ready. Thank you, Your Honor, and may it please the Court. Vassa's proposal was non-responsive. The RLP required exactly $20,000. I don't understand how the government can dismiss or holding of outstanding and impressive as dictum. Doesn't the Court have an obligation to determine whether the parties have standing? Yes, the Court does. Okay, so how can you dismiss that decision as dictum? Excuse me, Your Honor, which decision? Impreza holds that under circumstances identical to this, the losing bidder has standing, even though the contract could not be awarded but would have to be rebid. I don't understand how you can dismiss Impreza's holding that under those circumstances the party has standing as dictum. Well, we don't believe that it's dicta in Impreza. Well, that's what your brief said, isn't it? Isn't that what your brief said? With respect, applying it to that. Isn't that what your brief said? I believe so, but the legal issue in this case is whether— I don't think that it's desirable for the government to make arguments which are facially incorrect in its brief. We expect something better from you. Your Honor, thank you. That's noted, and we will take that to heart. But I would like to add that the legal issue here is whether this case is more like Impreza or more like Myers. And in Myers, when the court explained that you need to take one step farther than Impreza and you need to look to whether the protester was qualified to bid on the contract. And if you look at this particular case, three times Vass was told that it was required to bid and offer exactly 20,579 square feet. And if you go to the appendix at page— That whole—the point that you just made, Counselor, it seems to me that all of that signifies to me an ongoing negotiation and not that Vass was ever told that they were disqualified or somehow were not qualified to proceed any further. Well, in the first deficiency letter, they were directed to bid on the correct amount of square footage. But even in the third—in their third submission, Vass was— They're business people, and they're still trying to deal with over 5,000 square feet and no more parking spaces for it. And so they're trying to come up with a way to handle this in a commercial way. It's the marketplace, and you're in the marketplace, and they're negotiating to the best of their ability. But you never did tell them, you're out, you're disqualified. No, stop. It may be debatable whether the government led Vass, but either way, the government never did actually stop those negotiations. They kept on going to the very end. Yes, the government kept on negotiating until the very end, but I do want to clarify one point regarding parking spaces. In the third—for the third submission, the government had changed the number of parking places required and drastically reduced the number of parking spaces. So parking, if it had ever been an issue, was no longer an issue. And the parties, I don't believe, seriously— Well, there was an issue in that they had over 5,000 square feet but no more parking spaces. So that meant that this remnant of square footage was not marketable. So they're trying to give it to you at a reduced deal, and that's where the negotiations were. But that was not the government's need. And at the end of the day, what their offer required was that the government pay the actual shell rent rate, which is confidential, per square foot. And it would be escalated over the years exactly in the same manner for the square footage that the government was going to purchase. So what Vass did was sought to compel the government to purchase to lease space that it neither needed nor wanted. So you agree that the negotiations continued to the very end. But during that time, Vass was never told that your bid's defective. Well, if that's the—I mean, that's—it had been told that its bid was defective. It was first told after its first submission that it provided the wrong amount of square footage. After its second submission, Vass was again told it was outside of the competitive range. And after its—and in its third submission, it nevertheless included that excess space. So Vass was well aware of those facts. And if we look at the court's very recent decision—the court's very recent decision in asset protective, it was a very similar fact pattern where, as the trial court noted, there was a price element. And even though the bid was noncompliant, the contracting officer still included the protester's bid within his analysis. So how is it that the government was prejudiced by the two-year delay in commencing this case after the award? Well, the notice to proceed is only the final step of the preparation process. The first step is that the government is—and the awardee are required to actually design what the space is going to look like. So how was this 20,000-plus square feet going to be laid out? So the parties had to come to an agreement on architectural drawings, and that did not occur, I believe, until— I'm going to ask you a specific question. How was the government prejudiced by the two-year delay? Because the government did sink a tremendous amount of work in initially getting the drawings and an agreement on how the space was going to be laid out, so the government has already sunk a tremendous amount of effort into this process. And then, as counsel for the protester noted, the government issued its NTP. It was on September 3rd, and the expectation is that there will be a 120-day build-out. So construction is occurring right now, and the hope is to have a certificate of occupancy in the first quarter of next year. So the government has put a significant amount of effort into this procurement, even before issuance of the NTP. Is that reflected in the record? No, it's not reflected in the record. Just as plain as contention isn't reflected in the record, plain as contention that the government's not prejudiced either. When we look for prejudice, we look for it in the record, whether they contend it's in there or not. So was there prejudice? Where in the record was it? That was the question we asked them. There's no record evidence. And the main reason for that is that this all occurred after award of the contract, so you're not going to find something like that in the administrative record. And we did not attach any sort of declaration regarding prejudice. Okay, but look, the administrative record is not going to disclose the relevant facts about Latches, which is your argument. And Latches is an affirmative defense, right? Don't you have the obligation to show prejudice? Yes, it's an affirmative defense. And to be precise, we're not alleging Latches for dismissal of the case. What we're alleging is an untimely – We're alleging Latches as a defense to equitable relief. As opposed to equitable relief only, yes. But you still have the burden to show prejudice. I don't understand why the record is silent on the prejudice. Because we did not submit a declaration regarding prejudice facing the government. Instead, we stayed our hand so that the trial court could reach an orderly determination regarding this matter. Well, I think if you're going to rely on Latches, whether – regardless of the basis of that reliance, that you submit some form of proof of prejudice. Yes, we understand that. I see that my time is up. The court has no further questions. Yes, thank you. Thank you, Mr. – Okay, Mr. Gordon. Is Mr. Gordon – Mr. Gordon, please come forward. Thank you. Proceed. May it please the court. Vass's standing arguments to this court are waived because Vass did not raise them before the Court of Federal Claims. The government and Cape Moraine challenged Vass's standing before the Court of Federal Claims on the ground that its bid was noncompliant. Vass, which was represented by able, sophisticated, and experienced counsel, made one response and one response only, and that was to deny that its bid was noncompliant. It insisted that its bid was compliant. It did not make the arguments that it now advances to this court. Accordingly, it, under the well-established principle of this court, has waived those arguments and should not be heard to argue the Court of Federal Claims erred by not ruling on an argument that it did not make, namely the Impreza argument. Vass asked this court to relieve it the consequences of its choice. Although the court has discretion to decide an argument newly raised on appeal, it does so only rarely. Are you talking about the argument that all bids were defective? Yes, Your Honor. But the court made the ruling that all bids were defective, and that's how it applied the Impreza and the Tinton Falls case, right? Yes, Your Honor. I don't challenge Impreza or Tinton Falls, but my point is— But in reaching its decision with respect to those cases, the court found that all bids were defective. Okay. I don't challenge that, Your Honor. My point to the court is— So if it's in the court's decision, then how can you say that they waived it below? They didn't argue it below, Your Honor. They said not one word about Impreza, not one word about Tinton Falls, not one word about all the bids are noncompliant, and therefore it has to be rebid. That argument is made for the first time on appeal to this court. I would agree with you if the court had been silent about it or not made any type of decision with respect to the bids. But the court found that all bids were defective. The Court of Federal Claims did—I'm sorry, not in this case, Your Honor. The Court of Federal Claims did not find that all bids were defective. It found that Vassa's bid was noncompliant. It made no finding about whether or not Cape Moraine's bid was noncompliant. There is no finding in the record about that. Now, beyond the waiver argument, and I'm happy to address any questions about it, I would like to turn to the issue of delay in prejudice because I do have facts that I'd like to bring to the court's attention on that. Vassa argues that there's no prejudice to the government. But, in fact, there is prejudice to the government. More importantly, there is clear prejudice to my client, Cape Moraine, which is also a factor in this. Cape Moraine submitted its bid the very day it secured an option on the property that is the basis for its bid, an option to purchase. It then submitted its bid. It received the award. There was a protest to the GAO, and, therefore, there was an automatic stay. During the pendency of that, everyone stayed their hand. Once the GAO ruled and dismissed that protest as being untimely, it was only at that point that Cape Moraine proceeded to execute the option to purchase for a very substantial sum the property involved and to start the work pursuant to the lease, which has involved hundreds of thousands of dollars. Okay, but where is that in the record? It is in a declaration from our client that has been submitted in response to the motion for stay pending appeal. Oh, here, you mean? Yes, Your Honor. Well, that's not a record before the Court of Federal Claims. Where did you make the prejudice showing in the Court of Federal Claims? In the same circumstance, Your Honor. The motion for stay pending appeal was first made in the Court of Federal Claims. What you say is you exercised this option. You've incurred costs. You bought this property. To undo it now would cause substantial economic loss to your client. Where did you make a record of that in the Court of Federal Claims? Is that because the prejudice didn't occur until they exercised or issued the notice to proceed? The purchase occurred after the protest was dropped. The notice to proceed came only recently. I don't understand. The protest was dropped? The protest wasn't dropped. I'm sorry. The GAO protest was dismissed. There was a GAO protest that was filed in the immediate aftermath. Okay, but that was while the case was still pending in the Court of Federal Claims. No, it was before. Before it was filed. It was before. Okay, so this exercise of the option and the incurring of this financial liability occurred before the case was filed in the Court of Federal Claims. So my question is why didn't you make a record about this in the Court of Federal Claims to support a laches argument? Well, Your Honor, it didn't come up in terms of filing the administrative record. What happened in the Court of Federal Claims was procedurally that the administrative record was filed, and the parties made cross motions for judgment on the motion for administrative record. So that was not part of the administrative record. We didn't proceed that far. So the declaration you're telling us about is not part of the record that was before the Court of Federal Claims. It's before the Court of Federal Claims as part of the motion for stay that was made there. It's also before this court as part of the motion for stay that was made here. But it's not part of the record that was before the Court of Federal Claims at the time the court ruled that Voss lacked standing. So is your argument that if we conclude that the Court of Federal Claims was wrong on the standing question, we should send the case back there to have the court address the laches issue? Well, I think the laches issue remains, Your Honor. But we submit that the court should not send it back based on IMPRESA because that was not raised in the court. And it's been waived. Suppose we reject that because, as Judge Reina pointed out, the Court of Federal Claims decided the standing question, and that's before us. Let's assume that there's no waiver. If we conclude that there is standing under IMPRESA and Tinton Falls, the question is, what do we do about the laches question? Do we decide it here, or do we send it back to the Court of Federal Claims to address it? Well, typically, the answer, I think, is this, Your Honor. If the case, typically on unresolved issues, it would be remanded to the trial court to address in the first instance. That obviously is the general rule. But there is an exception when the facts are sufficiently clear that there's only one answer. And we are in a situation where this protest was not filed in the Court of Federal Claims until, as you, Your Honor, have pointed out, two years after the award, six months after the VAAS learned about the IG report, which they now want to trumpet. And as we sit here today, we're three years past the award, and there's been millions of dollars and hundreds of hours invested in moving forward with the lease that was awarded. So how, under these circumstances, a court could grant equitable relief on doing the whole thing? If those determinations involve factual findings, which it appears that it does, shouldn't we send this back to the Court of Federal Claims to decide those factual issues in the first instance? Well, I think that the court can take judicial notice of virtually all of those facts. I think that's pretty hard. You're talking about taking judicial notice that you bought a property and invested millions of dollars in. That's sort of tough. It's not in the record before the claims court. Any more questions for Mr. Thornton? Just one other question. You agree that if we reject your waiver argument that there is standing under Impreza and Tinton Falls? I wouldn't dispute it, Your Honor. You wouldn't dispute it? No, Your Honor. Okay, thank you. Okay. Thank you. Okay. Yes, Mr. Bahra. Thank you, Your Honors. Just a few points, and to Judge Dyke, to answer your question. Latches does go to the remedy available, not to the question of standing. And so if this court finds that Vass does have standing, the appropriate action is to send the matter back to the Court of Federal Claims to determine the appropriate available remedy. Well, are you seeking any remedy other than injunction against the award? No, we're not. But, you know, the injunction here would be an injunction pending this court's determination of the appeal. No, in the Court of Federal Claims, the only relief you're seeking is an injunction setting aside the award, right? That's correct. And on that question as to whether an injunction is appropriate, I think Your Honors made the point, neither the government nor Kate Moran has identified a cognizable prejudice that weighs against an injunction here. I mean, the government has referenced a tremendous amount of work that went into it. Let's go back to your remedy. How does that help you? Why is that favorable to you? Why is an injunction favorable to Vass? The relief that you just said that you seek. An injunction pending resolution of the protest ensures that Kate Moran cannot get so far into the build-out process that even if the Court of Federal Claims rules in Vass' favor, the government says, look, there's just nothing left to be done here. But don't you want them to reopen the bidding? We do, but to get there. Is that part of your prayer for relief under the injunction? Well, sure, if we prevail on the merits. But currently we're seeking an injunction. That wasn't your answer to Judge Dyke. Well, I apologize if I misspoke. Yes, we want to enjoin GSA to set the lease aside and rebid the procurement. But the need for an immediate injunction here, and the reason we requested it from this court, after having requested it from the Court of Federal Claims pending resolution of this appeal, is because the immediate concern is, even if we prevail on the merits of our protest before the Court of Federal Claims, if Kate Moran is allowed to continue the build-out process. How can you argue immediacy, or imminency, if you've let so much time go by? Again, Your Honor, the reason we can do that is because the government wasn't doing anything. Do you dispute that now, that Kate Moran has spent this money to acquire the property? I don't dispute that Kate Moran put in a declaration so stating. I would argue that that does not countenance prejudice, because Kate Moran was required to offer a building that it owned or controlled in order to participate in this procurement, as was Vass. If I understand you correctly, you don't dispute that they acquired the building and invested money for that purpose, right? I don't. I do dispute that that constitutes prejudice, because that was an investment they were going to have to make no matter what in order to participate in this procurement. In fact, Kate Moran's counsel's representation that they did not exercise the option on the property until Vass' GAO protest, which was in December of 2018, reaffirms the finding in the OIG report that Kate Moran misrepresented its ownership or control of the property at the time that it submitted its proposal. And so I don't think it's appropriate for Kate Moran to rely upon the fact that it spent money that it was required to, no matter what, to argue prejudice. Especially where, again, there is a cloud over this procurement that has been confirmed by the Office of the Inspector General. This is not just Vass saying it. And so the real salient prejudice here, if there's any, is to the government, but the government has been unable to articulate any. At best, I mean, to the extent there is a, quote, tremendous amount of work that went into the process, that sounds like some sort of monetary amount that it has not identified. You know, Vass throughout the process has explained its concerns about the fact that this is the only building it owns, and the government is its only client here, and it is facing a real existential threat from the loss of this lease, especially where the loss is through a procurement process that is confirmed to have been fundamentally unfair. And just one last point I'd like to make, Judge Reyna, in response to a question you had for Kate Moran's counsel. The Court of Federal Claims did not make a finding that Kate Moran was ineligible, which speaks to another problem in the decision. The Court of Federal Claims sort of dug through the record and adjudicated the merits to come up with a basis to determine Vass was ineligible without doing the same thing for Kate Moran. And this court in Orion said that is an improper way to determine standing on a motion to dismiss. Unless there are any other questions, I will rest at this point. Any more questions for Mr. O'Rourke? Okay. Thank you. Thanks to all counsel. The case is taken under submission.